**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| LAMAR M. CAPERS, | ) | CASE NO: 1:11-cv-2496 |
| Plaintiff, | ) ) ) | JUDGE LIOI |
| v. | ) ) | MAGISTRATE JUDGE VECCHIARELLI |
| MARGARET A. BRADSHAW, Warden, | ) ) ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2. Petitioner, Lamar M. Capers ("Capers"), challenges the constitutionality of his conviction in the case of *State v. Capers*, Case No. 09-CR-079681 (Lorain County 2010). Capers filed in this court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on November 17, 2011. For the reasons set forth below, Capers' petition should be DENIED.

I.

The state appellate court hearing Capers' direct appeal of his conviction and sentence found the following facts to be relevant to his case:

{¶ 2} In the early morning hours of December 15, 2009, Jillian Brewer Roark awoke to find her neighbor, Ms. Miller, inside Ms. Roark's apartment. According to Ms. Roark, Ms. Miller was upset and crying because she was fighting with her

boyfriend, Mr. Capers. Mr. Capers was outside in the parking lot yelling that he would shoot Ms. Miller's car if she did not allow him to enter the locked apartment building. After he calmed down, Ms. Roark opened the back door for him and ran back to lock her apartment door before he could enter the building. Soon, Mr. Capers was knocking on her door and trying to coax Ms. Miller to open it.

{¶ 3} According to Eric Ortiz, who was sleeping in Ms. Roark's apartment when Ms. Miller arrived, Mr. Capers did enter Ms. Roark's apartment and convince Ms. Miller to go across the hall to Ms. Miller's apartment to discuss their differences. About five minutes later, Ms. Miller ran back to Ms. Roark's apartment screaming and locked the door again. Soon, however, Mr. Capers successfully convinced Ms. Miller to open Ms. Roark's door so that they could talk. As soon as the door opened, Mr. Capers put something to Ms. Miller's temple, held it there for a few seconds, and then began to lower it. Mr. Ortiz and Ms. Roark testified that, by the shape of the item and the way Mr. Capers held it, it appeared to be a gun hidden inside a Crown Royal bag made of purple cloth. As Mr. Capers began to lower the gun, it went off, shooting a hole in Ms. Roark's living room floor. According to both Ms. Roark and Mr. Ortiz, everyone, including Mr. Capers, seemed shocked to hear the gun go off. Ms. Miller and Mr. Capers both testified that Mr. Capers did not have a gun, they never saw a gun, and they did not hear anyone shoot a gun.

{¶ 4} Ms. Roark said that Mr. Capers continued to try to talk to Ms. Miller, but Ms. Miller refused to speak to him until he got rid of the gun. Ms. Roark saw Mr. Capers go into the hallway with the gun and then enter Ms. Miller's apartment without it. Ms. Miller went into the hallway and came back with the gun a few seconds later. Ms. Miller gave the gun, still in the Crown Royal bag, to Ms. Roark and asked her to hide it. Then Ms. Miller returned to her apartment with Mr. Capers. Ms. Roark hid the bag in the pocket of a coat that was hanging in her closet and called the police. When police arrived, they found and arrested Mr. Capers in Ms. Miller's apartment.

{¶ 5} The State charged Mr. Capers with discharging a firearm at or into a habitation with a repeat violent offender specification, having a weapon while under disability due to a prior conviction for a felony offense of violence with a firearm specification, having a weapon while under disability due to a prior drug conviction with a firearm specification, possession of drugs, aggravated menacing, and domestic violence. Mr. Capers waived his right to a jury and tried the case to the court.

{¶ 6} At trial, Mr. Capers expressed some displeasure with his lawyer's performance. After the State had presented its two eye-witnesses, Mr. Capers asked the Court to recall them because his lawyer had refused to ask some questions that Mr. Capers wanted his lawyer to ask. Mr. Capers made it clear that he would like for his lawyer to continue representing him, but that he wanted

-2-

more control over his defense.  The trial court told him it would consider recalling the witnesses to allow Mr. Capers an opportunity to ask additional questions.  Later, during the direct examination of a police officer, Mr. Capers objected and posed a question.  The trial court told him to wait until his lawyer had had an opportunity to cross-examine the witness.  After the lawyers finished their examinations of the witness, the trial court allowed Mr. Capers to ask the witness whether the bullet hole could have been in Ms. Roark's living room floor before this incident.  After the State rested, the trial court allowed Mr. Capers to make a list of questions he would have liked to have asked the State's witnesses.  The court then recalled the two eye-witnesses as the court's own and asked a series of questions from Mr. Capers' list.  Finally, at the close of all evidence, Mr. Capers moved the court to allow him to present his own closing argument.  His lawyer agreed and the trial court granted the motion.  When it came time to give the closing argument, however, Mr. Capers and his lawyer asked to share the allotted time and the trial court agreed.

{¶ 7} The trial court found Mr. Capers not guilty of discharging a firearm at or into a habitation and not guilty of domestic violence.  It dismissed the repeat violent offender specification and found him guilty of all other counts and specifications.  The court then merged the two counts of having a weapon while under disability and the multiple firearm specifications so that Mr. Capers was convicted of one count of having a weapon while under disability with a single firearm specification.

*State v. Capers*, 2011 WL 1992034 (Ohio App. May 23, 2011).  The court sentenced Capers to a total of seven years' imprisonment.  Capers moved for a new trial, and the court denied the motion on March 25, 2010.

Capers timely appealed his conviction and sentence.  His appellate brief asserted six assignments of error:

    I.      The trial court committed plain error by not informing defendant-appellant of the mandatory post-release control term imposed upon release from prison as required by R.C. 2929.19(B)(3).

    II.     Trial judge committed plain error when it allowed a hybrid defense of Mr. Capers acting as co-counsel with defense counsel.

    III.    The guilty verdicts of Count Two, Three, Four and Five and of specificications [sic] One and Two of Counts Two and Three were against the manifest weight of the evidence and were based on insufficient evidence.

> IV. Defendant was denied his constitutional right to effective assistance of counsel when his attorney failed to obtain an expert, conduct inquiries defendant requested, and respect Mr. Capers.
>
> V. Trial judge errored [sic], to Mr. Capers' prejudice, when he allowed testimony about defendant's past violent history with Ms. Miller.
>
> VI. Trial judge committed plain error when it failed to remove Mr. Capers' trial counsel and appoint new trial counsel in his place.

On May 23, 2011, the state appellate court overruled Capers' second through sixth assignments of error but sustained his first assignment of error. The appellate court reversed the judgment of the trial court with respect to the imposition of post-release control and affirmed the remainder of the judgment. The court noted that Capers had defaulted his second ground for relief, the claim he raises in this court, and reviewed the claim for plain error before overruling it. The appellate court then remanded the case for the limited purpose of resentencing Capers to post-release control. There is no indication in the record that the trial court has as yet resentenced Capers.

Capers timely appealed the state appellate court's decision to the Ohio Supreme Court. In his memorandum in support of jurisdiction, Capers asserted a single proposition of law: "It is structural error to allow hybrid representation at trial." On October 19, 2011, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

During the pendency of his direct appeal, Capers filed in the trial court an untimely petition for post-conviction relief on June 27, 2011. Capers raised a single ground for relief in his petition: "Dept. of Rehab. & Corrections violated the separation-of-powers doctrine by reopening and modifying a valid judgment of a court of competent jurisdiction and so caused collateral pains affronting equal protection of the law."

-4-

Capers then filed two motions for summary judgment on his petition. The trial court denied his petition as untimely on September 15, 2011.

Capers timely appealed the denial of his petition for post-conviction relief to the state appellate court. In his brief in support of his appeal, Capers raised two assignments of error:

> Assignment of Error No, I: Trial court abused its discretion by entering judgment that evinces a perversity of will, defiance of judgment and/or exercise of passion or bias.
>
> Assignment of Error No, II: Trial court failed to exercise discretion in matters of merits underpinning untimely petition.

There is no indication in the record that the appellate court has yet ruled on this appeal.

Capers filed in this court a petition for a federal writ of habeas corpus on November 17, 2011. Capers asserts a single ground for relief in his petition:

> **Ground one**: Structural error infected trial pursuant [to] hybrid representation that proceeded without proper inquiry.

Respondent filed an Answer/Return of Writ on March 28, 2012. Doc. No. 3. Capers filed a Reply/Traverse on April 27, 2012. Doc. No. 7. Thus, the petition is ready for decision.

II.

*A. Jurisdiction*

The Court of Common Pleas of Lorain County, Ohio sentenced Capers. Capers filed his writ of habeas corpus in the Northern District of Ohio and raises claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254:

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a

> person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) & (d). Lorain County is within this court's geographic jurisdiction. Thus, this court has jurisdiction over Capers' petition.

Respondent argues, however, that Capers is not in custody pursuant to the judgment of a state court. A petitioner for a federal writ of habeas corpus must be in custody pursuant to a state court judgment and must challenge the conviction or sentence imposed by that judgment for a district court to have jurisdiction over the petition. *See* 28 U.S.C. § 2254(a); *Maleng v. Cook*, 490 U.S. 488, 490-91 (1988). Respondent asserts that because the state appellate court reversed part of the trial court's judgment against Capers and had not at the time Capers filed his petition resentenced him, he is not in custody pursuant to the judgment of a state court. Respondent's position ignores the fact that Capers is currently housed at the Richland Correctional Institution

Respondent errs. The state appellate court affirmed the judgment of the trial court with the sole and explicit exception of that portion of the judgment regarding Capers' sentence to post-release control. All other portions of Capers' sentence remain in effect, including his sentences to a total of seven years' imprisonment. For this reason, respondent's argument that Capers is not in custody pursuant to the judgment of a state court is not well taken.

*B.     Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings. 28 U.S.C. § 2254(e)(2). There is no need for an evidentiary hearing in the instant case. Capers' claim involves legal issues which can be independently resolved without additional factual inquiry.

*C.    Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted state remedies. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies. *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

The requirement that petitioners exhaust state remedies is a matter of comity between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (other citations omitted). Because exhaustion is a matter of comity, a petition containing unexhausted claims may be denied on the merits. 28 U.S.C. § 2254(b)(2).

Capers has no state remedies available for his claim. Because no state remedies remain available to him, Capers has exhausted state remedies.

*D.  Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Procedural default occurs when a petitioner fails to present fairly to the highest state court her claims in a federal constitutional context. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*, 459 U.S. 4 (1982).

If the state argues that a petitioner has procedurally defaulted his claims, the

-8-

court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Respondent argues that Capers has defaulted his only ground for relief. According to respondent, Capers failed to raise his claim in the trial court pursuant to Ohio. R. Crim. P. 30 at the time of the alleged error. Capers does not deny that he failed to raise this claim in the trial court.

"[I]n *Engle v. Isaac,* 456 U.S. 107, 124-29, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), the Supreme Court specifically found that default imposed for failure to object contemporaneously as required by Ohio's Rule 30 is an adequate and independent state ground to bar federal habeas review absent a showing of cause and prejudice." *Scott v. Mitchell*, 209 F.3d 854, 867 (6th Cir. 2000). Capers has, therefore, procedurally defaulted his sole ground for relief.

Capers does not demonstrate cause and prejudice for his default or demonstrate

-9-

that failure to enforce the default would result in a fundamental miscarriage of justice. Nevertheless, in an excess of caution, the court shall address the issue of structural error to ensure that Capers' failure to object at trial was not itself a product of a violation of his Sixth Amendment right to counsel.[1]

### III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, when a state court has examined the merits of a petitioner's claim, a writ of habeas corpus may issue only if the state court decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).

---

[1] Respondent also argues that the court may not consider Capers' sole ground for relief pursuant to the doctrine of invited error. According to the invited error doctrine, habeas relief is not available when a petitioner or his counsel invited the error about which he complains. *See Fulcher v. Motley*, 444 F.3d 791, 797-99 (6th Cir. 2006). The invited error doctrine is applied when a defendant requests a particular ruling from a trial court and later complains that the ruling he requested was erroneous. *See United States v. Sharpe,* 996 F.2d 125, 129–30 (6th Cir. 1993). As the court is barred from considering Capers' ground for relief by his procedural default, the court need not consider whether it is also barred from considering his claim by the invited error doctrine.

In the present case, Capers defaulted his claim that the trial court committed structural error when it allowed a hybrid defense. The state appellate court noted the procedural default then reviewed the claim for plain error. Ohio courts invoke "[t]he plain error rule . . . only in exceptional circumstances to avoid a miscarriage of justice." *State v. Long*, 372 N.E.2d 804, 53 Ohio St.2d 91 (Ohio 1978) (quoting *United States v. Rudinsky*, 439 F. 2d 1074, 1076 (6th Cir. 1971)). Plain error is established if, absent the error, the outcome of the trial clearly would have been otherwise. *Id.* at 808. Using this analysis, the appellate court found that allowing Capers to ask questions of witnesses and add his own closing arguments to those of his attorney did not prejudice his defense.[2] As the state courts have not ruled on the merits of Capers' claim, this court must conduct a *de novo* review of the claim. *Johnson v. Mitchell*, 585 F.3d 923, 936 (6th Cir. 2009) (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

Capers claims that when the trial court permitted him to ask questions of witnesses and supplement his attorney's closing arguments, it permitted him to represent himself *pro se*. It did so, according to Capers, without informing him of his right to counsel and warning him of the dangers of self-representation, as required by *Faretta v. California*, 422 U.S. 806, 835 (1975). Consequently, Capers conclude*s,* Capers' waiver of his right to counsel was not knowing and voluntary. Capers contends that for this reason, he was wrongly deprived of his right to counsel and that this was

---

[2] The review of a procedurally defaulted claim for plain error is not a review on the merits. "[T]he Ohio Supreme Court's plain error review does not constitute a waiver of the state's procedural default rules and resurrect the issue . . . ." *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006). Where a state appellate court concludes a defendant did not preserve an objection and a claim is reviewed for plain error, the objection remains procedurally defaulted. *Lundgren v. Mitchell*, 440 F.3d 754, 777 (6th Cir. 2006).

-11-

structural error.

Capers was not entitled to *Faretta* warnings, however, under the circumstances of his case. Capers did not tell the trial court that he wished to dispense with his attorney and proceed *pro se*. Rather, Capers requested only that the court allow him to ask questions that his attorney would not ask and make arguments that his attorney would not make. The court permitted Capers to ask his questions after his attorney had examined the witnesses and allowed him to make his arguments after his attorney had done so. A *Faretta* warning is not required in such a case:

> We agree that *Faretta* procedures are only required when a defendant has clearly and unequivocally asserted his right to proceed *pro se* . . . A defendant may assert either his right to counsel or his right to present his own defense. Because the assertion of the right to self-representation necessarily involves a waiver of the constitutional right to counsel, and given the importance of the right to counsel, we think the wisest course is to require a clear and unequivocal assertion of a defendant's right to self-representation before his right to counsel may be deemed waived. Requiring an articulate and unmistakable demand of the right to proceed *pro se* decreases the danger of a savvy defendant manipulating these two mutually exclusive rights to put the district court in a Catch-22. A defendant who seeks merely to supplement his counsel's representation . . . has failed to avail himself of his right to self-representation and thus failed to waive his right to the assistance of counsel. This case is readily distinguishable from cases in which a defendant assumes the whole of his representation part-way through trial or acts as co-counsel with full responsibility for certain witnesses.

*United States v. Cromer*, 389 F.3d 662, 682-83 (6th Cir. 2004) (footnote omitted).

Capers did not clearly and unequivocally ask to proceed *pro se*. The trial court was not, therefore, required to give him a *Faretta* warning before allowing him to ask questions of witnesses and give additional closing arguments. Moreover, because Capers did not relinquish representation by his attorney, he was not deprived of counsel in violation of his Sixth Amendment rights. There was, therefore, no structural error in

-12-

that respect. Capers' argument that his trial was fundamentally unfair because he was deprived of counsel in violation of his Sixth Amendment rights is without merit.

IV.

For the reasons given above, Capers' sole ground for habeas relief should be dismissed as procedurally defaulted, and his petition for habeas relief should be DENIED.


Date: May 29, 2012                                  s/ *Nancy A. Vecchiarelli*
                                                    United States Magistrate Judge


### **OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**