UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAMAR M. CAPERS, | ) | CASE NO. 1:11CV2496 |
| | ) | |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MARGARET A. BRADSHAW, Warden, | ) | |
| | ) | |
| | ) | |
| RESPONDENT. | ) | |

Before the Court is the Report and Recommendation ("R&R") of Magistrate Judge Nancy A. Vecchiarelli, recommending dismissal of this petition for writ of habeas corpus filed under 28 U.S.C. § 2254. (Doc. No. 9.) Pro se petitioner Lamar Capers ("petitioner" or "Capers") filed objections. (Doc. No. 10.) Respondent filed neither her own objections nor any response to petitioner's objections. Pursuant to Fed. R. Civ. P. 72(b)(3), the Court has conducted its de novo review of the matters raised in the objections. For the reasons discussed below, the objections are overruled, the R&R is accepted, and the petition for writ of habeas corpus is denied and dismissed.

## I. BACKGROUND

The facts, which "shall be presumed to be correct" absent clear and convincing evidence brought forward by petitioner, 28 U.S.C. § 2254(e)(1), were set forth as follows by the Ninth District Court of Appeals of Ohio:

> **{¶2}** In the early morning hours of December 15, 2009, Jillian Brewer Roark awoke to find her neighbor, Ms. Miller, inside Ms. Roark's apartment. According to Ms. Roark, Ms. Miller was upset and crying because she was fighting with her

boyfriend, Mr. Capers. Mr. Capers was outside in the parking lot yelling that he would shoot Ms. Miller's car if she did not allow him to enter the locked apartment building. After he calmed down, Ms. Roark opened the back door for him and ran back to lock her apartment door before he could enter the building. Soon, Mr. Capers was knocking on her door and trying to coax Ms. Miller to open it.

{¶3} According to Eric Ortiz, who was sleeping in Ms. Roark's apartment when Ms. Miller arrived, Mr. Capers did enter Ms. Roark's apartment and convince Ms. Miller to go across the hall to Ms. Miller's apartment to discuss their differences. About five minutes later, Ms. Miller ran back to Ms. Roark's apartment screaming and locked the door again. Soon, however, Mr. Capers successfully convinced Ms. Miller to open Ms. Roark's door so that they could talk. As soon as the door opened, Mr. Capers put something to Ms. Miller's temple, held it there for a few seconds, and then began to lower it. Mr. Ortiz and Ms. Roark testified that, by the shape of the item and the way Mr. Capers held it, it appeared to be a gun hidden inside a Crown Royal bag made of purple cloth. As Mr. Capers began to lower the gun, it went off, shooting a hole in Ms. Roark's living room floor. According to both Ms. Roark and Mr. Ortiz, everyone, including Mr. Capers, seemed shocked to hear the gun go off. Ms. Miller and Mr. Capers both testified that Mr. Capers did not have a gun, they never saw a gun, and they did not hear anyone shoot a gun.

{¶4} Ms. Roark said that Mr. Capers continued to try to talk to Ms. Miller, but Ms. Miller refused to speak to him until he got rid of the gun. Ms. Roark saw Mr. Capers go into the hallway with the gun and then enter Ms. Miller's apartment without it. Ms. Miller went into the hallway and came back with the gun a few seconds later. Ms. Miller gave the gun, still in the Crown Royal bag, to Ms. Roark and asked her to hide it. Then Ms. Miller returned to her apartment with Mr. Capers. Ms. Roark hid the bag in the pocket of a coat that was hanging in her closet and called the police. When police arrived, they found and arrested Mr. Capers in Ms. Miller's apartment.

{¶5} The State charged Mr. Capers with discharging a firearm at or into a habitation with a repeat violent offender specification, having a weapon while under disability due to a prior conviction for a felony offense of violence with a firearm specification, having a weapon while under disability due to a prior drug conviction with a firearm specification, possession of drugs, aggravated menacing, and domestic violence. Mr. Capers waived his right to a jury and tried the case to the court.

{¶6} At trial, Mr. Capers expressed some displeasure with his lawyer's performance. After the State had presented its two eye-witnesses, Mr. Capers asked the Court to recall them because his lawyer had refused to ask some questions that Mr. Capers wanted his lawyer to ask. Mr. Capers made it clear that

he would like for his lawyer to continue representing him, but that he wanted more control over his defense. The trial court told him it would consider recalling the witnesses to allow Mr. Capers an opportunity to ask additional questions. Later, during the direct examination of a police officer, Mr. Capers objected and posed a question. The trial court told him to wait until his lawyer had had an opportunity to cross-examine the witness. After the lawyers finished their examinations of the witness, the trial court allowed Mr. Capers to ask the witness whether the bullet hole could have been in Ms. Roark's living room floor before this incident. After the State rested, the trial court allowed Mr. Capers to make a list of questions he would have liked to have asked the State's witnesses. The court then recalled the two eyewitnesses as the court's own and asked a series of questions from Mr. Capers' list. Finally, at the close of all evidence, Mr. Capers moved the court to allow him to present his own closing argument. His lawyer agreed and the trial court granted the motion. When it came time to give the closing argument, however, Mr. Capers and his lawyer asked to share the allotted time and the trial court agreed.

**{¶7}** The trial court found Mr. Capers not guilty of discharging a firearm at or into a habitation and not guilty of domestic violence. It dismissed the repeat violent offender specification and found him guilty of all other counts and specifications. The court then merged the two counts of having a weapon while under disability and the multiple firearm specifications so that Mr. Capers was convicted of one count of having a weapon while under disability with a single firearm specification. . . .

(Return of Writ, Doc. No. 4-12 at 159-161.)

The trial court sentenced petitioner to a total of seven years in prison. (Doc. No. 4-25 at 496.) The court did not advise petitioner in open court on the record of the mandatory sentence of a three-year term of post-release control, but it did include post-release control in the sentencing entry. (Doc. Nos. 4-4, 4-5.) Petitioner's motion for a new trial was subsequently denied. (Doc. No. 4-7.)

Represented by new counsel, petitioner filed a direct appeal, asserting the following assignments of error:

    I.      The trial court committed plain error by not informing defendant-appellant of the mandatory post-release control term imposed upon release from prison as required by 2929.19(B)(3).

    II.       Trial judge committed plain error when it allowed a hybrid defense of Mr. Capers acting as co-counsel with defense counsel.

    III.      The guilty verdicts of Count Two, Three, Four and Five and of specificications [sic] one and two of Counts Two and Three were against the manifest weight of the evidence and was [sic] based on insufficient evidence.

    IV.      Defendant was denied his constitutional right to effective assistance of counsel when his attorney failed to obtain an expert, conduct inquiries defendant requested, and respect Mr. Capers.

    V.       Trial judge errored [sic], to Mr. Capers' prejudice, when he allowed testimony about defendant's past violent history with Ms. Miller.

    VI.      Trial judge committed plain error when it failed to remove Mr. Capers' trial counsel and appoint new trial counsel in his place.

(Doc. No. 4-10 at 94.)

On May 23, 2011, the Ninth District Court of Appeals of Ohio overruled the second through sixth assignments of error, but sustained the first, reversing the judgment with respect to the imposition of post-release control and remanding for the limited purpose of resentencing in compliance with the procedures set forth in Ohio Rev. Code § 2929.19.1. (Doc. No. 4-12.)[1]

On June 30, 2011, proceeding pro se, Capers timely appealed the appellate court's decision to the Ohio Supreme Court, asserting a single proposition of law: "It is structural error to allow hybrid representation at trial." (Doc. No. 4-15 at 188.) On October 19, 2011, the Ohio

---

[1] On June 27, 2011, Capers filed a pro se petition for post-conviction relief in the trial court, attempting to challenge his conviction on the firearm specification. (Doc. No. 4-17.) He argued that the Department of Rehabilitation and Corrections had violated the separation of powers by reopening and modifying one of his prior judgments of conviction, making him susceptible to the charge of having a weapon while under a disability with a firearm specification in the instant case. The petition was denied on September 15, 2011 because it was untimely filed. (Doc. No. 4-20.) An appeal relating to that denial remained pending at the time of the filing of the R&R. However, the current docket of the Ninth District Court of Appeals, of which this Court takes judicial notice, shows that the judgment was affirmed on June 18, 2012. *See State v. Capers*, No. 11CA010085, 2012 WL 2236607 (Ohio App. 9 Dist. June 18, 2012).

Supreme Court denied leave to appeal, finding no substantial constitutional question. (Doc. No. 4-16.)

Capers filed the instant petition on November 17, 2011, raising a single ground for relief:

> **Ground One:** Structural error infected trial pursuant hybrid representation that proceeded without proper inquiry.

(Doc. No. 1 at 4.) Respondent filed a return on March 28, 2012 (Doc. No. 4), and Capers filed a traverse on April 27, 2012 (Doc. No. 7).

On May 29, 2012, the Magistrate Judge issued her R&R recommending denial of the petition. The R&R concludes that the sole ground raised by petitioner is defaulted because it was not raised in the trial court pursuant to Ohio R. Crim. P. 30 at the time of the alleged error. However, "in an excess of caution," the R&R addresses the issue of structural error and concludes that, because Capers did not clearly and unequivocally ask to represent himself at trial, the trial court was not required to give him any warning under *Faretta v. California*, 422 U.S. 806, 835 (1975) (when an accused "clearly and unequivocally declare[s] [a desire] to represent himself," "he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.") (internal quotation marks and citation omitted). The R&R further concludes that, since Capers did not relinquish representation by his attorney, he was not deprived of his Sixth Amendment right to counsel.

By way of objection, petitioner argues that "the State did infact [sic] allow a hybrid representation and a violation of his Sixth Amendment Right to Counsel ensued." (Doc. No. 10 at 549.) He asserts that this was structural error.

## II. DISCUSSION

A. **Standard of Review**

Under 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party."). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F.Supp.2d 743, 747 (E.D. Mich. 2004). *See also* Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to"); LR 72.3(b) (any objecting party shall file "written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections"). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In conducting its de novo review in a habeas context, this Court must be mindful of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No.104-132, 110 Stat. 1214 ("AEDPA"), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim−

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

In addition, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant [for a writ of habeas corpus] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B.     De Novo Review of Objections**

In his petition, Capers asserts that the trial court permitted hybrid representation when it permitted him to "act[ ] as co-counsel" because "a conflict existed and [the] trial court never inquired as to [his] ability to represent [him]self." (Doc. No. 1 at 4-5, relying upon *Faretta*

8

and *State v. Martin*, 103 Ohio St. 3d 385 (2004).) Petitioner objects to the R&R's conclusion that he never clearly and unequivocally asked to represent himself, resulting in no need for the warnings required by *Faretta*. He cites this Court to places in the trial transcript where his "ongoing dispute" with his attorney was, according to him, evident.

In *Faretta*, the Supreme Court explained:

> It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him. Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense. Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.' *Illinois v. Allen*, 397 U.S. 337, 350-351, 90 S.Ct. 1057, 1064, 25 L.Ed.2d 353 (Brennan, J., concurring).
>
> * * *
>
> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits. *Johnson v. Zerbst*, 304 U.S., at 464-465, 58 S.Ct., at 1023. Cf. *Von Moltke v. Gillies*, 332 U.S. 708, 723-724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (plurality opinion of Black, J.). Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' *Adams v. United States ex rel. McCann*, 317 U.S., at 279, 63 S.Ct., at 242.

*Faretta*, 422 U.S. at 834-35 (footnote omitted).

In *United States v. Cromer*, 389 F.3d 662 (6th Cir. 2004), the court reviewed the "conflicting authority on the issue of when *Faretta* warnings are required." *Id.* at 680. Some

courts have found that "the *Faretta* inquiry is only necessary once the defendant has made an 'articulate and unmistakable demand' to proceed *pro se*." *Id*. at 681. "In other cases, however, courts have held that in the instance of hybrid representation, *Faretta* warnings must be given any time the defendant assumes any of the 'core functions' of counsel." *Id*. at 682.

Ultimately, the court in *Cromer* concluded that "*Faretta* procedures are only required when a defendant has clearly and unequivocally asserted his right to proceed *pro se*[.]" *Id*. It stated that "the wisest course is to require a clear and unequivocal assertion of a defendant's right to self-representation before his right to counsel may be deemed waived." *Id*. at 683. "A defendant who seeks merely to supplement his counsel's representation, . . . has failed to avail himself of his right to self-representation and thus failed to waive his right to the assistance of counsel." *Id*. Where there is no such clear and unequivocal waiver, there is no need "to warn . . . about the consequences of that waiver." *Id*.

In this case, Capers made no clear and unequivocal request to represent himself. In fact, the contrary is true -- he expressly stated that he wanted his counsel to continue to represent him. The transcript reflects the following exchange:

> THE DEFENDANT: Your Honor, I would like to say something on the record, also.
>
> THE COURT: Go ahead.
>
> THE DEFENDANT: Yes. I would like to call back one of the witnesses, if it's possible that I could do that, or maybe both of them, because Mr. Grunda [defense counsel] failed to ask questions that I asked him to, and there was inconsistency in her statements, and he failed to cross-examine on that.
> And also, I would like to -- is it possible -- when is it possible that I could do an in-camera inspection about the testimony, to find inconsistencies in their testimony? When is it possible?
>
> THE COURT: After the witness testifies, then the prosecutor must furnish you with the statements that you have in front of you. At that time, you are able to

read them, and then if there -- if the prosecutor doesn't want you to use those to cross-examine, then there has to be an in-camera inspection. That means I have to read it, to determine whether you could use it or not.

But in this case, Mr. Kinlin [prosecuting attorney] didn't object to Mr. Grunda using the statements for whatever purpose. So no in-camera inspection by me was necessary. He just said, you know, do what you will.

THE DEFENDANT: Okay. So is that the same thing for -- if my lawyer doesn't want to cross-examine this lady with these same statements?

THE COURT: Well, it's -- he has to use his judgment in asking questions. Sometimes you can get in trouble asking questions that you think will help you, and then they don't. So he has to make that determination.

THE DEFENDANT: So from now on is it possible that Mr. Grunda can ask questions, and then I tell him to ask -- instead of telling me things that he's been telling me, as far as I'm not intelligent enough to know what's going on --

MR. GRUNDA: I never said he wasn't intelligent enough, Your Honor.

THE DEFENDANT: You didn't call me stupid?

MR. GRUNDA: If he wants to be the lawyer, then I should not be the lawyer. I should be discharged.

THE COURT: Well, we're going to have Mr. Grunda finish the trial, and –

THE DEFENDANT: I just -- I would appreciate if he finishes the trial, but I would like him to ask the questions that I'm giving him to ask. He skipped a lot of the questions that I told him to ask. And I would like to also bring back both of the witnesses, because he missed a lot of questions that I needed him to ask.

THE COURT: Well, I'll take that request under advisement. I'll have to think about it.

(Doc. No. 4-24 at 341-43.)

This situation is very similar to the one in *Cromer*, where the defendant did not clearly and unequivocally ask to represent himself, but only sought to supplement the questions asked by his attorney, a request that was granted by the trial court. The same situation occurred

11

here and, in fact, petitioner expressly stated that he wanted defense counsel to "finish[ ] the trial."[2]

In his petition, Capers cites *State v. Martin*, 103 Ohio St. 3d 385, 390-91 (2004), for the proposition that the Supreme Court of Ohio has found hybrid representation to be a violation of the Sixth Amendment. Although *Martin* does not control in the context of a federal habeas corpus proceeding, even *Martin* does not assist petitioner because it is noticeably distinguishable on its facts. In *Martin*, the court described what happened at trial as follows:

> Martin asked to be "co-counsel" on the case, to be "part of that defense," "to make sure that * * * proper defense motions are filed," and to have "some control [over] what's going on." After many discussions in which Martin denied that he wanted to proceed pro se, the trial court, against Martin's wishes, stated, "[Y]ou're going to represent yourself." The court, in essence, denied his request to be "co-counsel" and required him to proceed pro se and relegated Martin's counsel to standby status. Although Martin's standby counsel stepped in and argued some motions and asked some questions of witnesses on occasion, Martin was required to conduct large portions of the trial pro se.

*Id.* at 390. Although the court concluded that, "in Ohio, a criminal defendant has the right to representation by counsel or to proceed pro se with the assistance of standby counsel [but that] these two rights are independent of each other and may not be asserted simultaneously[,]" *id.* at 391, its primary concern dealt with the total lack of any waiver by the defendant, who was essentially forced to proceed *pro se*. *Martin* is inapplicable here.

A review of the complete two-volume transcript in this case, including the portion quoted above reveals that, during the trial, which was to the court, the trial judge allowed Capers, at his request, to speak on the record and to ask an occasional question during the trial. At other times, Capers simply blurted out questions or comments. (*See, e.g.*, Doc. No. 4-24 at 341-43;

---

[2] One important distinction can be made between the trial in the instant case and that in *Cromer*. Here, the trial was to the judge, whereas in *Cromer* it was to a jury. Courts have noted that, among the reasons for avoiding hybrid representation is the potential for confusing the jury. *See United States v. Mosely*, 810 F.2d 93, 97-98 (6th Cir. 1987). Obviously, that was not a concern in the instant case.

349; 357; 365-66; 382-83; 385-86; 414; 418; 419; 428; 429-30; 431-33.)[3] The judge also permitted Capers to submit questions in writing for two particular witnesses, whom the trial judge then questioned as his own witnesses, using some of petitioner's questions. (Doc. No. 4-24 at 432-33; Doc. No. 4-25 at 438-60.) Further, the judge allowed Capers to make a summation at the end of trial, in addition to his counsel's summation and closing. (Doc. No. 4-25 at 481-82.) Capers was represented by counsel and never clearly and unequivocally sought to represent himself. Further, although he participated in a minimal fashion during the trial, there was no improper hybrid representation that rose to the level a constitutional violation.

Because petitioner has failed to establish a Sixth Amendment violation, his objection is overruled.

### III. CONCLUSION

For the reasons discussed above, petitioner's objections to the R&R are overruled. The petition for writ of habeas corpus is denied and the case is dismissed. Further, the Court certifies that an appeal from this decision could not be taken in good faith and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: October 3, 2013

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[3] In many of the instances where Capers made a comment or asked a question, it was the trial judge, not any witness who responded. (*See, e.g.*, Doc. No. 4-24 at 382-83.)